FARUQI & FARUQI LLP
ATTORNEYS AT LAW

NEW YORK     CALIFORNIA     DELAWARE     PENNSYLVANIA     GEORGIA

April 4, 2018

**VIA CM/ECF**

The Honorable Lewis A. Kaplan
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

   Re: *DeSmet v. Intercept Pharmaceuticals, Inc., et al.*, No. 1:17-CV-07371 (LAK)

Dear Judge Kaplan:

  We represent Hou Liu and Amy Fu (the "Liu Family") in connection with the Lead Plaintiff motion they filed in this action. We write on the Liu Family's behalf to oppose the March 28, 2018 letter motion ("Letter Motion") of Abraham Kassin ("Kassin") requesting the Court to allow him to re-file his previously withdrawn lead plaintiff motion by permitting him to "withdraw Mr. Kassin's Notice withdrawing his Lead Plaintiff Motion[.]" ECF No. 45 at 1.

  As a threshold matter, a re-filed lead plaintiff motion would be untimely. *See infra* § I. Furthermore, even if a re-filed lead plaintiff motion were deemed timely, it would nonetheless be moot because Kassin and his proposed Lead Counsel fail to satisfy the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B). Namely, Kassin failed to establish his financial interest in the case through timely and reliable evidence. *See infra* § II. Additionally, Kassin and his proposed Lead Counsel, The Rosen Law Firm, P.A. ("Rosen"), are inadequate to represent the class because, when Kassin withdrew his original lead plaintiff motion, Kassin and Rosen intentionally concealed from the Court, other movants, and absent class members a *de facto* Co-Lead Counsel and Co-Lead Plaintiff agreement (the "Co-Lead Structure") that Kassin and Rosen had entered into with the "Intercept Investor Group" ("IIG") and IIG's counsel Pomerantz LLP ("Pomerantz") and Levi & Korsinsky LLP ("L&K"). *See infra* § III. Accordingly, the Liu Family respectfully requests that Kassin's Letter Motion be denied.

685 THIRD AVENUE     NEW YORK, NY 10017     PHONE: 212.983.9330     FAX: 212.983.9331     FARUQILAW.COM



The Honorable Lewis A. Kaplan
April 4, 2018
Page 2

## PROCEDURAL HISTORY

On November 27, 2017, five movants filed motions seeking appointment as Lead Plaintiff and approval of their selection of counsel as Lead Counsel: (1) the Liu Family alleged losses of $109,656.73 and sought approval of Faruqi & Faruqi, LLP as Lead Counsel (ECF Nos. 14, 16); (2) IIG alleged losses of roughly $2.2 million and sought approval of L&K and Pomerantz as Co-Lead Counsel (ECF Nos. 8-10); (3) Abraham Kassin ("Kassin") did not allege a specific loss figure[1] but sought approval of Rosen as Lead Counsel (ECF. Nos. 6, 7); and (4) Richard Schubert ("Schubert") alleged losses of $58,229.85 and sought approval of Glancy Prongay & Murray LLP as Lead Counsel (ECF Nos. 11-13).

The deadline to oppose appointment of competing movants was December 11, 2017. *See* L.Civ.R. 6.1. On that day, Kassin formally withdrew his lead plaintiff motion (the "Withdrawal") recognizing that Kassin did not have the largest financial interest in the litigation but affirming "his ability to serve as a representative party ***should the need arise*** n [sic]." ECF No. 18. The Withdrawal gave no indication that a "need" for Kassin to serve as a representative party already existed; nor did the Withdrawal state that Kassin and Rosen would be materially involved in the action on a going-forward basis.

By contrast, on that same day, the Liu Family and Schubert filed ***notices of non-opposition*** to the competing lead plaintiff motions. ECF Nos. 19, 20. Neither the Liu Family nor Schubert withdrew their motions, with the Liu Family stating instead, "…should the Court determine that any of the other movants with larger financial interests in the outcome of this litigation are unable to serve as Lead Plaintiff, [the Liu Family is] willing and able to assume the role of Lead Plaintiffs on behalf of the purported class." ECF No. 20 at 2.

IIG also filed a brief that day in further support of its lead plaintiff motion, declaring victory as the last remaining movant. ECF No. 21. Several days later, however, the Court issued an order requesting that IIG and its counsel disclose whether "there are any agreements or understandings between or among the plaintiffs who withdrew or announced non-opposition[.]" ECF No. 25.

In response, on January 9, 2018, IIG filed a joint declaration from its counsel explaining ***for the first time*** that, on or around December 7, 2017, "Kassin's counsel, Rosen, advised

---

[1]  On November 28, 2017—a day after motions were due—Kassin filed a "Notice of Abraham Kassin's Loss Chart" (ECF No. 17) that attached a purported loss calculation by Kassin.


FARUQI & FARUQI LLP
ATTORNEYS AT LAW

The Honorable Lewis A. Kaplan
April 4, 2018
Page 3

Pomerantz and [L&K] . . . that in the interest of avoiding protracted motion practice with respect to the appointment of a lead plaintiff, Kassin was willing to withdraw his motion." Joint Declaration of Jeremy A. Lieberman and Adam M. Apton in Response to Order ("Joint Decl.") at ¶3, ECF No. 31. However, in exchange for Kassin's Withdrawal: (1) Rosen agreed to join a *de facto* Co-Lead Counsel structure with Pomerantz and L&K whereby Rosen would receive 25% of the attorneys' fees awarded in the action (in some instances regardless of whether Rosen performed 25% of the work);[2] and (2) Rosen poached IIG's right as the Lead Plaintiff to decide whether to include Kassin as a named plaintiff in the action. *See id.* at ¶¶4-7; Joint Decl. Ex. A.[3] At no point prior thereto did IIG, Kassin, Pomerantz, L&K, or Rosen ever disclose to the Court, competing movants, or absent class members that they had entered into a *de facto* Co-Lead Structure pursuant to which Kassin and Rosen would remain silently, but heavily, involved in this action.

In light of this newly discovered evidence, on January 10, 2018, the Liu Family filed a request to withdraw its non-opposition so that they could oppose IIG's lead plaintiff motion. ECF No. 32. The Court granted the Liu Family's request the following day. ECF No. 35. On January 22, 2018, the Liu Family filed a brief in support of their motion arguing that IIG and its counsel were inadequate due to *inter alia* the lawyer-driven nature of their relationship and, alternatively, requested discovery of IIG and its counsel concerning how IIG was formed and L&K's improper solicitation campaign *inter alia*. ECF No. 38.

On February 1, 2018, IIG responded and, in an effort to avoid discovery and the issues raised by the Liu Family, amended IIG's original request that IIG be appointed Lead Plaintiff and L&K and Pomerantz be appointed Co-Lead Counsel, and instead sought appointment of James V. Hunter ("Hunter"), who alleged losses of $409,138 in his various capacities, as *sole* Lead Plaintiff, and approval of Pomerantz as *sole* Lead Counsel. ECF No. 40 at 1-4. In response to this amended motion, the Liu Family sought leave to file a brief in opposition to Hunter's new application. ECF No. 42.

Before the Court had a chance to rule on the Liu Family's request, on March 16, 2018, IIG abruptly withdrew its and Hunter's motion. ECF No. 43. While IIG did not provide a reason for its withdrawal, presumably IIG's counsel at Pomerantz was concerned about receiving

---

[2]   The terms of the Co-Lead Structure themselves violate Rule 1.5(g) of the New York Rules of Professional Conduct because the division of fees would not necessarily be in proportion to the services performed. *See* Joint Decl., Ex A.; ECF No. 38 at 8-9.

[3]   *See In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MD 2058 (PKC), 2011 WL 4538428, at *1 (S.D.N.Y. Sept. 29, 2011).



The Honorable Lewis A. Kaplan
April 4, 2018
Page 4

another written opinion like the one it received earlier that day from United States District Court Judge Mark L. Wolf. *See Garbowski v. Tokai Pharms., Inc.*, No. 16-cv-11992-MLW, 2018 WL 1370522, at *2, *10, *12 (D. Mass. Mar. 16, 2018) (finding Pomerantz inadequate to serve as lead counsel because *inter alia* "[n]o one at Pomerantz ever spoke to Maxon," the proposed lead plaintiff, "or communicated with him directly, until" one year after Pomerantz filed Maxon's motion, when "the court expressed its intent to question [Maxon]").

During this entire time Kassin remained silent. This remained true even when Hunter—***who purported to have suffered smaller losses than Kassin***—moved for appointment as sole Lead Plaintiff with Pomerantz as sole Lead Counsel. *Compare* ECF No. 40 at 1-2 (Hunter asserted $409,138 in losses) with ECF No. 17-1 (Kassin asserted $950,736.47 in losses). Yet on March 28, 2018, nearly four months after Kassin withdrew, Kassin attempted to wrest control of this litigation for a third time via his Letter Motion. ECF No. 45. In the declaration attached to Kassin's request, he explained that he withdrew his original motion to "avoid a protracted lead plaintiff motion battle" and that by joining up with IIG, he "planned to serve as a named plaintiff in the amended complaint and ultimately as a Class Representative." Declaration of Abraham Kassin ("Kassin Decl.") at ¶¶3, 4, ECF No. 45-1. Kassin further stated that since IIG "has now withdrawn its motion, the work and fee sharing arrangement with counsel for [IIG] is now terminated[,]" demonstrating that, despite IIG's representation to the Court that Pomerantz would serve as *sole* Lead Counsel for *sole* Lead Plaintiff Hunter, counsel for IIG and Kassin continued to remain in a secret Co-Lead Structure that Kassin and Rosen failed to disclose to the Court and other class members. *Id.* at ¶5.

## STANDARDS

Pursuant to the lead plaintiff provisions of the PSLRA, once the first-filed plaintiff publishes notice of a case, class members are required to seek appointment as lead plaintiff within 60 days of the publication. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II); ECF No. 15 at 3-4. Under the PSLRA, the Court is required appoint the most adequate plaintiff as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who

> (aa) has either filed the complaint or made a motion in response to a notice (published by a complainant); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); ECF No. 15 at 3-4.



The Honorable Lewis A. Kaplan
April 4, 2018
Page 5

      Accordingly, the PSLRA requires that, in addition to timely filing a lead plaintiff motion and possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also satisfy the adequacy and typicality requirements of Fed. R. Civ. P. 23(a). *See* 15 U.S.C. § 78u-4(a)(3)(B); ECF No. 15 at 6. In considering the adequacy of a proposed lead plaintiff, "a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation." *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011). Typicality is satisfied where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008).

      Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**ARGUMENT**

**I.    KASSIN'S REQUEST IS IMPROPER AND UNTIMELY**

      Kassin's March 28, 2018 Letter Motion is improper. Once he withdrew his lead plaintiff motion, it functionally disappeared and became a nullity. In effect, his lead plaintiff motion never existed and thus cannot be revived through his Letter Motion filed nearly four months later. *See Davis v. United States*, No. EDCV 07-0481-VAP (OPx), 2010 WL 334502, at *2 (C.D. Cal. Jan. 28, 2010) ("The effect of withdrawal of a motion is to leave the record as it stood prior to the filing as though the motion had never been made."); *see also Remley v. Lockheed Martin Corp.*, No. C 00-2495 CRB, 2001 WL 681257, at *3 (N.D. Cal. June 4, 2001) (finding that the withdrawal of a motion effectively means that the party "had not made the motion"); *Jimenez v. Thor Motor Coach, Inc.*, No. 1:16-cv-01927-DAD-JLT, 2017 WL 3085015, at *1 (E.D. Cal. Apr. 12, 2017) (same); *accord United States v. Outen*, 286 F.3d 622, 631 (2d Cir. 2002) ( "A withdrawal of an appeal is an expression of the intent of the parties (principally, of course, the appellant) not to pursue the appeal any further and brings the appeal to an end."). Kassin cannot now restore a motion which never existed.



The Honorable Lewis A. Kaplan
April 4, 2018
Page 6

Furthermore, Kassin's Letter Motion is too late to comply with the PSLRA's 60-day deadline, which ended on November 27, 2017. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II); ECF No. 15 at 5. Courts typically enforce the PSLRA's 60-day deadline strictly, particularly when doing so would support the PSLRA's policy objectives. *See, e.g.*, *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 142 (S.D.N.Y. 2007) ("[C]ourts have strictly construed this time limitation and found those motions for appointment as lead plaintiff filed outside of the sixty-day window to generally be time-barred.") (collecting cases); *Carson v. Clarent Corp.*, No. C 01-03361-CRB, 2001 WL 1782712, at *2 (N.D. Cal. Dec. 14, 2001) (rejecting motion filed two weeks late); *Skwortz v. Crayfish Co.*, No. 00 CIV. 6766(DAB), 2001 WL 1160745, *5 (S.D.N.Y. Sept. 26, 2001) (holding that the PSLRA's 60-day lead plaintiff motion deadline is "mandatory" and refusing to consider a party who filed one day late); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action."). Thus, Kassin has not timely moved for appointment as Lead Plaintiff. Indeed, if Kassin had wanted to keep his original motion pending before the Court, he should have filed a notice of non-opposition like the Liu Family did. ECF No. 20. To the contrary, Kassin chose instead to withdraw his lead plaintiff motion and give the appearance that he and his counsel were no longer involved in the case.

Moreover, by sitting on his hands for the past four months, Kassin waived his ability to reinsert himself into this litigation. In *Teran v. Subaye, Inc.*, No. 11 Civ. 2614 (NRB), 2011 WL 4357362, at *2 n.2 (S.D.N.Y. Sept. 16, 2011), the court equated a movant's failure to file an opposition brief with a withdrawal or abandonment of its initial motion to serve as lead plaintiff. Similarly, in *Bray v. Frontier Communs. Corp.*, No. 3:17-cv-1617 (VAB), 2018 WL 525485, at *9 n.2 (D. Conn. Jan. 18, 2018), the court disqualified a lead plaintiff candidate who failed to file a brief opposing the appointment of the other movant. *Accord City of Ann Arbor Emples. Ret. Sys. v. Accuray Inc.*, No. C 09-03362 CW, 2009 WL 3517667, at *2 n.2 (N.D. Cal. Oct. 26, 2009). Here, Kassin had three opportunities to oppose competing lead plaintiff motions: (1) on December 11, 2017, he could have opposed IIG's brief in further support of its lead plaintiff motion; (2) on February 1, 2018, he could have opposed the Liu Family's brief in further support of its lead plaintiff motion; and (3) on February 15, 2018, he could have opposed IIG's request to appoint Hunter as sole Lead Plaintiff. Kassin squandered these opportunities, respectively waiting 107, 55, and 41 days before eventually filing his Letter Motion on March 28, 2018. Kassin has therefore waived his right to seek appointment as Lead Plaintiff. *See Gilchrist v. O'Keefe*, 260 F.3d 87, 95 (2d Cir. 2001) (*citing Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("[W]aiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.")).



The Honorable Lewis A. Kaplan
April 4, 2018
Page 7

## II.    KASSIN HAS FAILED TO ESTABLISH HIS FINANCIAL INTEREST IN THE LITIGATION

A lead plaintiff motion must be supported by competent evidence of the movant's financial interest. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. Civ. 8495(RMB), 2015 WL 1345931, at *3-4 (S.D.N.Y. Mar. 19, 2015) (denying lead plaintiff motion because the "Court is unable to verify [movant's] claimed losses"). Notwithstanding, Kassin failed to provide the Court and the Liu Family with sufficient information to properly value his financial interest.

First, despite claiming that "financial loss" is the most significant factor of the Lax/Olsten financial interest test, nowhere in Kassin's original lead plaintiff briefing did Kassin attempt to quantify his losses. ECF No. 7 at 4. Instead, Kassin filed a chart depicting his loss calculation a day later, after the PSLRA's 60-day deadline had already expired. ECF Nos. 17, 17-1; *see In re NYSE Specialists*, 240 F.R.D. at 138 ("[S]upplementation [of a movant's losses] after the expiration of the sixty (60) day period would not only be inconsistent with the language of the PSLRA, but would effectively nullify the time limits expressly provided therein.") (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 410-11 (S.D.N.Y. 2004)).

Even then, Kassin's tardy loss calculation and certification are utterly unreliable. In fact, ***89 out of 99 purchases listed on Kassin's loss calculation do not match the purchases listed on his certification***. *See* Ex. A (chart comparing the purchases listed in Kassin's certification and loss calculation);[4] *see also Bhojwani v. Pistiolis*, No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (finding that movant's errors in loss submissions "indicate[d] a certain carelessness about detail that undermines the adequacy of Mr. Cole (and his associated group) as a lead plaintiff").

What's more, Kassin listed many transactions on his certification and loss calculation that are at prices outside of the historical price range for Intercept stock on the days in question. Kassin's sworn certification ***contains 58 transactions in Intercept stock that do not fall within the historical trading price range for those shares***. *See* Ex. B (chart listing certification transactions that do not match historical prices); Ex. C (Yahoo! Finance historical prices for

---

[4]   Unless stated otherwise, all exhibits are to the Declaration of Richard W. Gonnello filed contemporaneously herewith.



The Honorable Lewis A. Kaplan
April 4, 2018
Page 8

Intercept).[5] Further, Kassin's loss calculation contains 12 transactions that do not fall within the historical trading ranges for those days. *See* Ex. D (chart listing loss calculation transactions that do not match historical prices); Ex. C (Yahoo! Finance historical prices for Intercept). Inaccuracies of this nature alone are sufficient to render a movant inadequate to serve as Lead Plaintiff. *See Tesco PLC*, 2015 WL 1345931, at *3, *4 (finding inadequate movant who submitted "various trades that either fall outside of the daily price range . . . or constitute[d] more shares traded on a given day given the total trading volume . . . for the stock on such days").

Additionally, Kassin did not provide the cost basis for his opening balance of the 4,500 shares which he sold at the beginning of the Class Period; thus, Kassin failed to account for any gains attributable to the sale of those shares. *See Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("FIFO has the potential to exaggerate losses, by failing to take into account gains that an investor might have made on the stock that were attributable to its artificial inflation as a result of the alleged fraud; LIFO, on the other hand, takes into account such gains.").

Given the abundance of errors, omissions, and questionable trades in Kassin's belated submissions, Kassin has failed to establish his financial interest in the case by timely and reliable evidence. Therefore, he has failed to trigger the PSLRA's "largest financial interest" presumption. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### III.  KASSIN AND HIS COUNSEL ARE INADEQUATE AND ATYPICAL

Congress enacted the PSLRA to curb lawyer-driven litigation. *See Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 463 (S.D.N.Y. 2009). To accomplish this goal, the PSLRA established a unique procedure requiring the Court to vet and appoint a "lead plaintiff" to oversee the action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The lead plaintiff then acts "as a fiduciary for all members of the proposed class" and "must provide fair and adequate representation and management to obtain the largest recovery for the proposed class consistent with good faith and meritorious advocacy." *Schnall v. Annuity & Life Re (Holdings), Ltd.*, No. 3:02 CV 2133 (EBB), 2007 WL 2936242, at *2 (D. Conn. Oct. 5, 2007). It is critical that a lead plaintiff exercise good faith when performing these duties because its conduct binds absent class members and impacts their due process rights. *See Scott v. N.Y. City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 355 (S.D.N.Y.

---

[5]  The Court may take judicial notice of a company's stock price. *See, e.g., In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 763 F. Supp. 2d 423, 584 (S.D.N.Y. 2011) ("[S]tock price is also judicially noticeable.").



The Honorable Lewis A. Kaplan
April 4, 2018
Page 9

2004) (Class representatives "must [] adequately represent the interests of absent class members since a judgment in a class action binds absent class members whose due process rights would be thus imperiled.").

Similarly, the PSLRA established a procedure empowering the Court to appoint "lead counsel" to represent the class based upon the lead plaintiff's selection of counsel. 15 U.S.C. §78u-4(a)(3)(B)(v). Lead counsel serves as a fiduciary to the lead plaintiff and the class, and likewise possesses a duty of honesty and candor to the Court, other movants, and absent class members. *See Schick v. Berg*, No. 03 Civ. 5513(LBS), 2004 WL 856298, at *5 (S.D.N.Y. Apr. 20, 2004) ("[B]eyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed.")

Both Kassin and Rosen are inadequate to represent the class because they violated their duties of honesty and candor by failing to disclose the Co-Lead Structure to the interested stakeholders.[6] When Kassin withdrew from the action, he and Rosen failed to disclose that they had entered into the Co-Lead Structure days earlier that provided Rosen with 25% of any attorneys' fees awarded and Kassin the right to be appointed as a class representative. ECF No. 18. Then, when IIG represented that Pomerantz would serve as *sole* lead counsel if Hunter were appointed, Kassin and Rosen again failed to inform the Court and class members that the Co-Lead Structure remained intact and that Kassin and Rosen intended to litigate the case on other class members' behalf. *See* ECF No. 40; Kassin Decl. at ¶5.

When judging "the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff" as well as its counsel. *Savino v. Computer Credit*, 164 F.3d 81, 87 (2d Cir. 1998) (finding plaintiff inadequate because he made contradictory statements about when he received a letter); *Chana Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010) ("[I]n considering whether the proposed class counsels are adequate, the Court may consider the honesty and integrity of the putative class counsel[.]"). When a named plaintiff and his counsel engage in dishonest behavior by failing to disclose a co-lead counsel agreement to the court, they are inadequate to serve as class representatives. *See Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 199 (S.D.N.Y. 2015) (finding plaintiff inadequate to represent the class in part because he failed to disclose an attorney fee-sharing agreement during the lead plaintiff appointment stage); *In re IMAX Sec.*

---

[6] If class counsel is inadequate, so is the class representative, and vice versa. *See Culver v. City of Milwaukee,* 277 F.3d 908, 913 (7th Cir. 2002) ("For purposes of determining whether the class representative is an adequate representative of the members of the class, the performance of the class lawyer is inseparable from that of the class representative.").



The Honorable Lewis A. Kaplan
April 4, 2018
Page 10

*Litig.*, 272 F.R.D. 138, 155 (S.D.N.Y. 2010) (finding the lead plaintiff inadequate and denying class certification when he was represented by a undisclosed attorney who had not been approved by the Court). Furthermore, Rules 3.3(a) and 8.4(c) of the New York Rules of Professional Conduct establish an attorney's duty of candor and prohibit an attorney from making "misleading or false representations to a court." Ex. E, *In re Peters*, No. M-2-38, 2013 U.S. Dist. LEXIS 60722, at *110-11 (S.D.N.Y. Apr. 10, 2013). The Second Circuit has explained that the "the duty of candor is so basic, and so important to proceedings before the Court . . . , that the possibility of suspension should be considered in every case involving violation of that duty." *In re Hochbaum*, 649 F. App'x 80, 83 (2d Cir. May 23, 2016). Thus, Kassin and Rosen should not be permitted to serve in a fiduciary capacity to the class when they violated these fundamental duties.

Kassin's and Rosen's actions in turn were intended prevent the Court from fulfilling its duties to vet counsel under the due process clause and the PSLRA. *See* Ex. F, *Randall v. Fifth St. Fin. Corp.*. No. 15-cv-7759 (LAK), Memorandum with Respect To Selection of a Lead Plaintiff and Lead Counsel at 2 (S.D.N.Y. Dec. 23, 2015) (the court "is entitled to know which law firm it would select were it obliged to select only one."). "Because absent class members will be bound by the results obtained by the class representatives and their attorneys, due process requires the Court to scrutinize the adequacy of purported class representatives." *Morel v. Giuliani*, 927 F. Supp. 622, 633 (S.D.N.Y. 1995); *Sharif v. New York State Educ. Dep't*, 127 F.R.D. 84, 90 (S.D.N.Y. 1989). Thus, to protect "the due process rights of absent class members[,]" the court must consider whether "class counsel is qualified, experienced, and generally able to conduct the litigation." *Chana Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 156 (S.D.N.Y. 2010). A court, however, cannot scrutinize proposed lead counsel if it is not aware of which attorneys intend to serve as lead counsel. Likewise, the court cannot scrutinize a lead plaintiff's selection of counsel if the proposed lead plaintiff did not actually select proposed counsel, such as was the case with IIG and Rosen via the Co-Lead Structure that was agreed to.

Kassin and Rosen's failure to disclose their Co-Lead Structure was no mistake: Rosen was undoubtedly aware of this and other courts' aversion to co-lead plaintiff and co-lead counsel structures. *See Randall v. Fifth St. Fin. Corp.*, 15-cv-7759 (LAK), 2016 WL 462479, at *2 (S.D.N.Y. Feb. 1, 2016); Ex. G, *Freedman v. Weatherford International Ltd.*, No. 1:12-cv-02121-LAK, Order at 1 (S.D.N.Y. July 10, 2012). In fact, in *Fifth St.*, the Court conducted a similar inquiry into the fee arrangements and counsel agreements entered into by the lead plaintiff movants. Ex. F, at 2. Thus, rather than face the inevitable disaggregation of their post-motion group, Kassin and Rosen decided to gamble with the rights of absent class members and hide their arrangement from the Court. *See Faris v. Longtop Fin. Tech. Ltd.*, No. 11 Civ.



The Honorable Lewis A. Kaplan
April 4, 2018
Page 11

3658(SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (allegations of dishonesty disqualified a lead plaintiff movant because they subject it to a unique defense).

Kassin and Rosen feign that they simply entered into the undisclosed Co-Lead Structure to avoid protracted litigation. However, if Kassin and Rosen were aware of actual infirmities in IIG's lead plaintiff motion, yet did nothing about it, Kassin and Rosen are inadequate to represent the class. Rather than fulfilling their fiduciary duties to the class by vetting IIG's fitness to serve as Lead Plaintiff, Kassin and Rosen chose to knowingly allow a supposedly atypical or inadequate group to serve as Lead Plaintiff in order to secure a financial interest in the case. *See* Ex. H, *Gutman v. Sillerman*, No. 15 Civ. 7192 (CM), 2015 U.S. Dist. LEXIS 179553, at *11 (S.D.N.Y. Dec. 8, 2015) (disqualifying movant who withdrew his lead plaintiff motion in an "obvious effort to shoehorn [proposed counsel] into lead counsel status"). Under the terms of the Co-Lead Structure, Kassin and Rosen also allowed IIG to violate its future fiduciary duties to the class by abdicating IIG's right under the PSLRA to name and evaluate class representatives. *See In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MD 2058 (PKC), 2011 WL 4538428, at *1 (S.D.N.Y. Sept. 29, 2011); *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013(LAK)(AJP), 2007 WL 438320, at *3 (S.D.N.Y. Feb. 8, 2007) (noting that the PSLRA "significantly restricts the ability of plaintiffs' attorneys to interpose themselves as representatives of a class"). Further, by failing to disclose the Co-Lead Structure, Kassin and Rosen allowed IIG (if appointed) to violate absent class members' due process rights to be informed as to who represents them. *See Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 166 n.11 (2d Cir. 2001); *Manual for Complex Litigation* §§ 21.31, 21.311 (4th ed. 2004) (Class certification notice required by Fed. R. Civ. P. 23(c)(2)(B) should "identify the opposing parties, class representatives, and counsel").

Occam's razor posits that the simplest explanation for a phenomenon is the one most likely to be true. The simplest explanation for the undisclosed Co-Lead Structure is that Rosen, Pomerantz, and L&K decided to join forces in this action as part of a risk diversification strategy concerning their inventory of contingency cases. However, after realizing that this Court does not permit arrangements of this nature, they decided to conceal the Co-Lead Structure from the Court and other movants, betting on the mantra of rulebreakers everywhere that it is better to ask for forgiveness than to ask for permission.



The Honorable Lewis A. Kaplan
April 4, 2018
Page 12

    For all of the reasons stated above, the Liu Family respectfully requests that they be appointed Lead Plaintiff and their selection of Faruqi & Faruqi LLP be approved as Lead Counsel.

Respectfully submitted,

Richard W. Gonnello

cc: All Counsel of Record (via ECF)