UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOU LIU and AMY FU, Individually and On Behalf of All Others Similarly Situated,<br><br>Lead Plaintiffs,<br><br>v.<br><br>INTERCEPT PHARMACEUTICALS, INC., MARK PRUZANSKI, SANDIP S. KAPADIA, RICHARD KIM, and RACHEL MCMINN<br><br>Defendants. | No. 1:17-cv-07371-LAK<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................... 3

ARGUMENT ....................................................................................................................... 6

I.   PLAINTIFFS' REQUESTS ARE SUFFICIENTLY PARTICULARIZED AND
     MINIMALLY BURDENSOME........................................................................................ 7

II.  PLAINTIFFS' REQUESTS ARE NECESSARY TO PREVENT UNDUE
     PREJUDICE .............................................................................................................. 7

CONCLUSION..................................................................................................................... 10

Plaintiffs Hou Liu and Amy Fu ("**Plaintiffs**") respectfully submit this memorandum of law in support of Plaintiffs' motion to partially lift the stay of discovery imposed on the above-captioned action ("**Action**") by the Private Securities Litigation Reform Act of 1995 ("**PSLRA**"), 15 U.S.C. §78u-4(b)(3)(B).[1]

## INTRODUCTION

Plaintiffs request two limited categories of documents.

The first category seeks the following three documents that Lead Counsel requested from the European Medicines Agency ("**EMA**")[2] in March 2018 (the "**EMA Request**") concerning Ocaliva, a drug manufactured by defendant Intercept Pharmaceuticals, Inc. ("**Intercept**"), which has been associated with multiple deaths and serious liver injuries:

(1) Intercept's Periodic Safety Update Report for the period of December 12, 2016 through June 11, 2017 (the "**PSUR**");

(2) the EMA's Pharmacovigilance Risk Assessment Committee assessment report EMEA/H/C/PSUSA/00010555/201706 (the "**PRAC Report**"); and

(3) Intercept's latest approved Risk Management Plan (the "**RMP**"), as of March 23, 2018 (collectively, the "**EMA Documents**").

*See, e.g.*, ¶¶1-18, 86, 150.[3]

---

[1] Unless otherwise noted, all emphases are added and all internal quotations and citations are omitted. Unless otherwise defined, all defined terms herein have the same meaning as in the Amended Class Action Complaint ("**AC**"), ECF No. 52, which is attached as Exhibit A to the Declaration of Richard W. Gonnello ("**Gonnello Decl.**"), filed herewith.

[2] The EMA is the European counterpart to the U.S. Food and Drug Administration. *See* AC at vi.

[3] All "¶___" references are to the AC.

1

The second category consists of materials related to the meritless lawsuit that Intercept has filed against the EMA in June 2018 which seeks to annul the EMA's May 15, 2018 decision to grant Lead Counsel access to the PSUR (the "**European Lawsuit**").[4]  Namely, Plaintiffs seek all of the current and future briefing in the European Lawsuit and all correspondence between the EMA and Intercept or its agents[5] about the EMA Request and the European Lawsuit (collectively, "**European Lawsuit Documents**").

The EMA Documents contain information relevant to Plaintiffs' claims in this Action concerning Defendants' false and/or misleading statements about patients' compliance with Ocaliva's dosing regimen and Ocaliva's safety.  Not only has Intercept's European Lawsuit prevented Plaintiffs from accessing the PSUR *indefinitely*, it has also put the EMA's decision on the release of the RMP and the EMA's own PRAC Report on hold *indefinitely.*  Moreover, Plaintiffs cannot take any necessary legal action with respect to arguments made in Intercept's European Lawsuit because they do not have access to any of the parties' briefing or correspondence in the case.  Thus, if Defendants somehow succeed in having this Action dismissed with prejudice, as they urge in their motion to dismiss (*see* ECF No. 62 at 35), Plaintiffs may not receive the documents from the EMA in time to amend their complaint or seek relief from final judgment (*see* Fed. R. Civ. P. 60(b)(2), (c)).

---

[4]  *See* Case T-377/18, *Intercept Pharma and Intercept Pharmaceuticals v. European Medicines Agency*, CURIA (June 20, 2018), http://curia.europa.eu/juris/document/document.jsf?text=&docid=205311&pageIndex=0&doclang=en&mode=lst&dir=&occ=first&part=1&cid=82752.

[5]  On September 12, 2018, a "consultant" (whose identity is unknown to Plaintiffs) requested that the EMA provide it with the identify of the person who submitted the EMA Request.  Presumably, the consultant is someone who works for Intercept.

2

As a result, Plaintiffs are left with no choice but to seek a partial lift of the PSLRA's discovery stay to request that Defendants produce both categories of documents. Plaintiffs' requests do not run afoul of the purposes of the discovery stay, as Plaintiffs are neither engaged in a fishing expedition nor seeking to coerce a quick settlement. Rather, Plaintiffs are trying to obtain: (1) the EMA Documents they are entitled to obtain through a non-discovery procedure—a public records request to the EMA—which they already would have received, ***but for*** Intercept's stall tactics; and (2) the European Lawsuit Documents so that Plaintiffs will be in a position to take necessary legal action if Intercept is mischaracterizing anything about ***this*** Action to the European court and/or the EMA. Plaintiffs' requests thus meet the standards for lifting the PSLRA's discovery stay because they are sufficiently particularized, minimally burdensome to Defendants, and necessary to prevent undue prejudice to Plaintiffs.

## FACTUAL AND PROCEDURAL BACKGROUND

This Action alleges, *inter alia*, that Intercept and certain of its officers and directors violated federal securities laws by making false and/or misleading statements about patients' compliance with the dosing regimen for Intercept's drug Ocaliva and about the safety of Ocaliva, which has been associated with multiple deaths and serious liver injuries. *See generally* AC.

To obtain additional information about these claims, Lead Counsel submitted the EMA Request—formally, an Application for Access to Documents[6] (ASK-40399)—to the EMA pursuant to Regulation 1049/2001 of the European Parliament and of the Council of 30 May 2001 Regarding Public Access To European Parliament, Council and Commission Documents, 2001 O.J. (L 145) 43-48 (the "**Regulation**"). The Regulation governs the right to access documents of European Union institutions, bodies, offices, and agencies. *See Access to*

---

[6] Applications for Access to Documents are the European equivalent of a Freedom of Information Act request in the U.S. ¶172.

3

*European Parliament, Council and Commission documents*, EUR-Lex, https://eur-lex.europa.eu/legal content/EN/TXT/?uri=LEGISSUM%3Al14546 (last visited Sept. 26, 2018). The Regulation favors public access: its "basic principle . . . is that any document is public to the extent that there is no exception or other restriction to the contrary." Bart Driessen, *Transparency in EU Institutional Law: A Practitioner's Handbook*, at 41 (Kluwer Law Int'l 2d ed. 2012) ("**Transparency**").

Most of the Regulation's exceptions are found in its Article 4, which provides, *inter alia*, that requests for access to documents may be denied "where disclosure would undermine the protection of . . . commercial interests of a natural or legal person . . . , [or] court proceedings and legal advice, . . . unless there is an overriding public interest in disclosure." *See* Regulation, art. 4(2). The "commercial interests" exception applies to "legitimately" held "business secrets[,]" but "does not cover all information relating to a company and its business relations." *Transparency*, at 84. The "court proceedings" exception is "limited to the content of documents drawn up by an institution **<u>solely</u>** for the purposes of specific court proceedings." *Id.* at 93 ("The purpose of this definition of the scope of the exception is to ensure both the protection of work done within the [European] Commission and confidentiality and the safeguarding of professional privilege for lawyers.").

Lead Counsel submitted the EMA Request on March 23, 2018, seeking materials relating or pertaining to Ocaliva's safety and other information about Ocaliva collected by the EMA. *See* ¶172. On March 27, 2018, Lead Counsel refined its request to seek the EMA Documents in the following order: (1) the PSUR; (2) the PRAC Report; and (3) the RMP. All three documents pertain to Ocaliva's safety and are therefore relevant to Plaintiffs' claims in this Action.

On May 15, 2018, the EMA informed Lead Counsel that after assessing the request for

4

the PSUR under the relevant provisions of the Regulation, *including the exceptions listed in Article 4*, it decided that access to the PSUR should be granted and that the document would be sent to Lead Counsel no sooner than 10 working days after the EMA consulted with Intercept. *See* ¶174.  The EMA had not yet finished its assessment of Plaintiffs' request for the other two documents at that time.

Shortly thereafter, the EMA informed Lead Counsel that Intercept was challenging the release of the PSUR, which put the PSUR's release and the EMA's processing of the other two documents on hold *indefinitely*.  *See id*.  On June 20, 2018, Intercept then filed its European Lawsuit against the EMA in the General Court of the European Union ("**General Court**") which seeks to annul the EMA's decision to release the PSUR.  *See id.; see also* European Lawsuit.

On July 31, 2018, Plaintiffs filed the AC in this Action.  Thereafter, a brief summary of Intercept's challenge was made public on the General Court's website.  *See* Gonnello Decl., Ex. B.  Based on this summary, Intercept's main argument appears to be that the EMA erred when it concluded that Article 4(2)'s "court proceedings" exception did not apply to the PSUR on the ground that it "was not a document 'prepared for the purpose of court proceedings.'"  *Id.*  Intercept also argues "further or in the alternative" that in deciding to release the PSUR, the EMA failed to properly balance the "compelling weight of [Intercept's] private interest in avoiding disclosure" under Article 4(2)'s "commercial interests" exception with the "merely vague and generic public interest in disclosure."  *Id.*  No further information about Intercept's challenge is available, as the pleadings and other filings related to such challenges are not publicly accessible.  *See Report From the Commission on the application in 2010 of* [the *Regulation*], at 5, European Commission (Aug. 12, 2011),

5

https://publications.europa.eu/en/publication-detail/-/publication/3b7bc771-16fb-4a5f-bf13-188795dca6f0/language-en (last visited Sept. 26, 2018).

On September 14, 2018, Defendants filed their motion to dismiss this Action, arguing that Intercept's European Lawsuit is "lawful" (although tellingly they make no argument that it is meritorious), that the PSUR is confidential,[7] and seeking to dismiss this Action with prejudice. *See* ECF No. 62 at 28, 35.

## ARGUMENT

The PSLRA imposes an automatic stay of discovery in securities class actions "during the pendency of any motion to dismiss[.]"  15 U.S.C. §78u-4(b)(3)(B).  Congress enacted the discovery stay provision to minimize the incentives for plaintiffs to file frivolous actions in hopes that either (1) "corporate defendants will settle those actions rather than bear the high cost of discovery"; or (2) "that the plaintiff will find during discovery some sustainable claim not alleged in the complaint[.]"  *In re Worldcom Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002).  Although the stay is automatic, it is not absolute.  The PSLRA allows the stay to be modified "upon the motion of any party that *particularized* discovery is necessary to preserve evidence *or* to prevent undue prejudice to that party."  15 U.S.C. §78u-4(b)(3)(B).  When deciding whether to lift the stay, courts often consider whether the requested discovery "places an undue burden on the party from which it is requested."  *In re Labranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004).  Lifting the stay is appropriate here because Plaintiffs' requests are sufficiently particularized, minimally burdensome, and necessary to prevent undue prejudice.

---

[7]   Ironically, Defendants claim in their motion to dismiss that documents that can be obtained through a FOIA request are public, yet they insist that the PSUR—which can be obtained through the European equivalent of a FOIA request—is confidential.  *Compare* ECF No. 62 at 28, *with id.* at 31-32.

## I. PLAINTIFFS' REQUESTS ARE SUFFICIENTLY PARTICULARIZED AND MINIMALLY BURDENSOME

Plaintiffs request that Defendants produce the EMA Documents and the European Lawsuit Documents.

Plaintiffs' requests are clearly defined and therefore meet the PSLRA's particularity requirement. *See Waldman v. Wachovia Corp.*, 2009 WL 86763, at *1 (S.D.N.Y. Jan. 12, 2009) (finding request sufficiently particularized where it was limited to an easily identifiable set of documents); *Vacold LLC v. Cerami*, 2001 WL 167704, at *7 (S.D.N.Y. Feb. 16, 2001) (finding request sufficiently particularized where it was "solely related to the nature and timing of J&J's interest in AVT and VLN, and its agreement to invest in those companies[]").

Additionally, providing copies of the requested materials will not unduly burden Defendants because they are readily identifiable, not voluminous, and either already compiled or will be easy to compile. Plaintiffs are also willing to pay the reasonable costs of reproducing the documents requested. Many courts in similar circumstances have found that the defendants' burden is minimal and ordered production. *See, e.g.*, *Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*, 2009 WL 1285845, at *1 (S.D.N.Y. May 8, 2009) (burden to defendants is slight where defendants have "already found, reviewed and organized the documents[]" and would cost them nothing); *Singer v. Nicor, Inc.*, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) (similar).

## II. PLAINTIFFS' REQUESTS ARE NECESSARY TO PREVENT UNDUE PREJUDICE

Courts interpret "undue prejudice" as used in the PSLRA, to mean "improper or unfair treatment amounting to something less than irreparable harm." *Labranche*, 333 F. Supp. 2d at 182. Although Plaintiffs have not found any cases directly on point, Courts have found undue prejudice and partially lifted the discovery stay to allow plaintiffs to obtain: (1) relevant

7

documents the defendants produced to government agencies, *see, e.g., Waldman*, 2009 WL 86763, at *2; *Singer*, 2003 WL 22013905; and (2) relevant documents available to litigants in related proceedings, *see, e.g., WorldCom*, 234 F. Supp. 2d at 305 (finding that the securities plaintiff would be unduly prejudiced without the documents because it would be unable "to make informed decisions about its litigation strategy in a rapidly shifting landscape" where documents already made available to government officials and soon to the ERISA plaintiffs); *Westchester*, 2009 WL 1285845, at *1-2 (ordering defendants to produce an internal investigation report available to Brazilian litigants where U.S. plaintiffs were comparatively disadvantaged without them).  Plaintiffs' situation is analogous.

Here, Intercept has filed a lawsuit in Europe based primarily on the Regulation's "court proceedings" exception that has: (1) prevented Plaintiffs from accessing the PSUR—***a document that the EMA decided they should be able to access***—***indefinitely***; and (2) halted the processing of the other two documents Plaintiffs requested ***indefinitely***.  Based on the information available to date, Intercept's European Lawsuit on this basis appears to be novel at best and frivolous at worst for at least two reasons.  First, the PSUR was not created solely for "court proceedings" within the meaning of Article 4(2) as evidenced by the fact that the PSUR ***was submitted to the EMA***—a European agency responsible for, *inter alia*, the safety monitoring of medicines in the EU and Intercept's ***adversary*** in the European Lawsuit.  Second, the EMA already considered the Regulation's exceptions and decided that they did not apply ***before*** concluding that access should be granted.  *See In re FLIR Sys., Inc. Sec. Litig.*, 2000 WL 33201904, at *3 (D. Or. Dec. 13, 2000) (noting that the PSLRA is not "a sword with which defendants can destroy the plaintiffs' ability to obtain information from third parties who are otherwise willing to disclose it," and that it was appropriate to lift the stay to allow a deposition of the defendant's former employee where

"defendants have taken steps to ensure that [the employee] could not talk to plaintiffs or provide relevant documents" without a subpoena).

Similarly, Intercept's alternative argument that the "commercial interests" exception of the Regulation should prevent the PSUR's release because the public's interest in its disclosure is "merely vague and generic" is absurd. It is difficult to imagine an issue of much greater public interest than the safety of prescription medication.

To make matters worse, Plaintiffs are left without the ability to take necessary legal action if Intercept is mischaracterizing anything about *this* Action in the European Lawsuit because Plaintiffs do not have access to any of Intercept's filings in that case or relevant communications with the EMA about the EMA Request or the European Lawsuit. For example, it is possible that Intercept is trying to use the Regulation's "court proceedings" exception to claim that the discovery stay in *this* Action should prevent the PSUR's release. The European courts may be unaware that such an argument is frivolous because public records requests—like the EMA Request at issue—are not discovery under U.S. law and are therefore not subject to the PSLRA's discovery stay. *See Am. Bank v. City of Menasha*, 627 F.3d 261, 265 (7th Cir. 2010) (collecting cases and stating "[t]he case law uniformly refuses to define requests for access to federal or state public records under public records laws (such as the federal Freedom of Information Act . . . ) as discovery demands, even when as in this case the request is made for the purpose of obtaining information to aid in a litigation . . .").

Furthermore, even if Intercept loses its challenge with respect to the PSUR, there is nothing to prevent it from further slowing Plaintiffs' access to the remaining two EMA Documents by challenging their release after the EMA renders a decision on their disclosure. Indeed, should Defendants succeed in having this Action dismissed with prejudice, as they urge

9

in their motion to dismiss, Plaintiffs may not receive the EMA Documents until it is too late to seek relief from a final judgment based on such newly discovered evidence, thereby allowing Defendants to escape liability through their delay tactics. *See* Fed. R. Civ. P. 60(b)(2),(c) (providing that litigants have one year to seek relief from final judgment on this basis); *Cf. Vacold*, 2001 WL 167704, at *6 (collecting cases in which undue prejudice was found "where defendants might be shielded from liability in the absence of the requested discovery[]").

Thus, a partial lifting of the stay to grant Plaintiffs access to the EMA Documents and European Lawsuit Documents is necessary to prevent Plaintiffs from being unduly prejudiced.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and partially lift the PSLRA's discovery stay for the limited purposes of permitting the requested discovery.

Dated: October 29, 2018     Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Richard W. Gonnello*
     Richard W. Gonnello

Richard W. Gonnello
Katherine M. Lenahan
Sherief Morsy
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330
Fx: (212) 983-9331
E-mail: rgonnello@faruqilaw.com
         klenahan@faruqilaw.com
         smorsy@faruqilaw.com

*Attorneys for Lead Plaintiffs*